IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Equal Employment Opportunity Commission, | ) ) ) | Civil Action No. 6:08-3249-HMH-BHH |
| Plaintiff, | ) ) ) | **REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE** |
| vs. | ) ) ) | |
| Cromer Food Service, Inc., | ) ) ) | |
| Defendant. | ) ) ) ) ) | |

This matter is before the Court on the defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 and motion to dismiss pursuant to Federal Rule of Civil Procedure 12. [Doc. 47.] The plaintiff EEOC, on behalf of Homer Howard, has plead claims for hostile work environment, on account of Howard's sex, and for retaliation, pursuant to Title VII of the Civil Rights Act of 1964, as amended. The Court will refer interchangeably to the EEOC and Howard as "the plaintiff."

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Rule 73.02(B)(2)(g), D.S.C., all pretrial matters in employment discrimination cases are referred to a United States Magistrate Judge for consideration.

## FACTS PRESENTED

The defendant is a provider of industrial food services, whose primary business is selling food and beverages through vending machines placed on the customer's

1

premises. (Cromer Dep. at 31-32.) C.T. Cromer is the defendant's owner and chairman of the board. *Id*. at 30-31.

The plaintiff was hired as a second-shift route driver at the defendant's Anderson facility in July 2006. *Id*. at 44. He worked from 3:00 to 11:00 p.m., Monday through Friday. *Id*. The plaintiff's vending route mainly involved restocking the defendant's vending machines at Greenville Memorial Hospital ("Greenville Hospital"). (Cromer Dep. at 45.)

The plaintiff contends that, during his employment with the defendant and while performing his duties at the hospital, he was sexually harassed by two male employees of Greenville Hospital, John Mills and Andre McDowell. (Pl. Dep. at 25, 28, 120.) Mills and McDowell were not employees of the defendant nor did they have any supervisory role over the plaintiff. Starting on or around December 2006, the plaintiff alleges that Mills and McDowell began harassing him about his sexual orientation, discussing their own sexual desires concerning the plaintiff, and making some sexual gestures in the plaintiff's presence. The precise details of Mills' and McDowell's alleged conduct will be discussed in more detail *infra*. In short, they allegedly suggested he was gay, propositioned him, discussed anal and oral sex, and at least one of the two individuals fondled themselves in the plaintiff's presence. (Pl. Dep. at 36-37, 86-87, 120-22.) The plaintiff alleges an unwanted touching on at least one occasion when Mills purportedly put his arms around the plaintiff and said "Oh, Homer. I didn't know you loved me that much. You're buying me a Valentine's gift?" The plaintiff became angry and loudly told

Mills "don't put your hands on me" and "I wish you'd get the hell out of my face." *Id.* at 78-80.

Around December 5, 2006, Howard complained to the defendant's Plant Manager, Greg Adams, about the sexual harassment by Mills and McDowell. (Pl. Dep. at 45-46.) The plaintiff has put forward other evidence that he continued to complain about the harassment, including to Cromer. (Howard Dep. at 45-48, 51, 54, 58, 112-113, 124; Adams Dep. at 22-23; Cromer Dep. at 12, 75-76, 124-125, 128-129.) The plaintiff contends, however, that his complaints were laughed at, dismissed, and ignored. (Pl. Dep. at 46-47, 54, 58-59, 112.)

On March 6, 2007, the plaintiff filed a charge of discrimination against the defendant with the Equal Employment Opportunity Commission. (Pl. Ex. 11.) On March 23, 2007, after reporting to work, Cromer handed the plaintiff a memorandum notifying him that he was being assigned to a first shift driver route effective immediately. (Pl. Dep. at 65, Def. Ex. D, G.) The plaintiff contends that he was told that he had to take the shift transfer or that he would be fired. (Pl. Dep. at 71-72.) The plaintiff claims that the new shift would not accommodate his serious childcare responsibilities. When the plaintiff inquired about some alternative shift arrangement, he was allegedly told to "take it or leave it." (Pl. Dep. at 76.)

It appears that the plaintiff, thereafter, quit his employ with the defendant.

## **APPLICABLE LAW**

Federal Rule of Civil Procedure 56(c) states, as to a party who has moved for summary judgment:

3

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary

judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Furthermore, Rule 56(e) provides in pertinent part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e). Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must produce existence of every element essential to his action that he bears the burden of adducing at a trial on the merits.

## **DISCUSSION**

I.  **Hostile Work Environment Claim**

The plaintiff first contends that the actions of Mills and McDowell created a hostile work environment for which the defendant is liable.

To establish a hostile work environment claim, the plaintiff must prove by a preponderance of the evidence that he was subjected to (1) unwelcome harassment; (2)

5

based on his sex; (3) that is sufficiently severe or pervasive to alter the conditions of his employment and create an abusive atmosphere; and (4) that is imputable to the defendant. *See Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 184 (4th Cir. 2001). The defendant contends that the plaintiff cannot establish either the third or the fourth elements of his prima facie case.[1]

### 1. Severe or pervasive

The "severe or pervasive" element of a hostile work environment claim "has both subjective and objective components." *Ocheltree v. Scollon Prods., Inc.*, 335 F.3d 325, 333 (4th Cir. 2003) (en banc). First, the plaintiff must show that he "subjectively perceive[d] the environment to be abusive." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21-22 (1993). Next, the plaintiff must demonstrate that the conduct was such that "a reasonable person in the plaintiff's position" would have found the environment objectively hostile or abusive. *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81-82 (1998).

As to the subjective element, the defendant's only contention is that the plaintiff, because of the nature of his work, had the ability to "walk away" from the offending

---

[6] The defendant does not contest that the alleged harassment was on account of the plaintiff's sex and, therefore, that issue need not be addressed by the Court. The Court would note, however, that the fact that this case involves alleged same-sex harassment is no bar to a claim that the alleged conduct was on account of the plaintiff's sex. *See Oncale, Inc.*, 523 U.S. at 79. And, sexual desire is not a *per se* requisite showing. *Id*. at 80. Notwithstanding, issues of fact exist as to the "on account of sex" requirement of the claim insofar as the plaintiff has testified that he believes the harassment by Mills and McDowell was, in fact, motivated, in part, by sexual desire. (Howard at 34, 37, 80, 87, 115.) Mills apparently has testified that he has sex with both men and women and that his most recent relationship was with a man. (Mills Dep. at 23-24.) McDowell, however, denies that he has ever had sex with men. (McDowell Dep. at 15.)

6

individuals and their comments. (Pl. Dep. at 86-87.) The defendant would emphasize that the plaintiff was never around other employees long enough to converse with them. *Id*. at 92. By extension, the Court supposes the defendant to mean that the conduct cannot be considered subjectively severe or pervasive because the plaintiff could escape it.

Issues of fact exist as to the plaintiff's subjective impression. The plaintiff has responded with evidence that he repeatedly complained about the harassment (Pl. Dep. at 45-51, 54, 56-58, 94-96, 124); that he told Mills and McDowell to leave him alone and to stop touching and verbally harassing him, *id*. at 26, 33, 37, 78-80; and that the harassment, in fact, emotionally affected him, *id*. at 99, 101. A reasonable jury could conclude, based on this evidence, that the plaintiff subjectively perceived the harassment as severe or pervasive. *See, e.g., Spriggs*, 242 F.3d at 185-86 (finding a victim's complaints to supervisors about harassment shows he believed the environment was hostile or abusive).

As to the objective severity of the harassment, it "should be judged from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances,'" giving "careful consideration of the social context in which particular behavior occurs and is experienced by its target." *Oncale*, 523 U.S. at 81; *see also Harris*, 510 U.S. at 23 (warning whether a hostile environment actually existed "can be determined only by looking at all the circumstances"). "There is no mathematically precise test" for determining when a hostile or abusive work environment exists. *Harris*, 510 U.S. at 22. The circumstances that should be considered include: (1) the frequency

of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with an employee's work performance.  *Harris*, 510 U.S. at 23; *see also EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008).  But, "'no single factor is' dispositive." *Sunbelt*, 521 F.3d at 315 (quoting *Harris*, 510 U.S. at 23).

In order to be actionable, the harassing "conduct must be [so] extreme [as] to amount to a change in the terms and conditions of employment." *Id*. (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).  The Fourth Circuit has "recognized that plaintiffs must clear a high bar in order to satisfy the severe or pervasive test." *Id*. It has stated, therefore, that the "task then on summary judgment is to identify situations that a reasonable jury might find . . . where the environment was pervaded with discriminatory conduct 'aimed to humiliate, ridicule, or intimidate,' thereby creating an abusive atmosphere." *Id*.  (quoting *Jennings v. Univ. of North Carolina*, 482 F.3d 686, 695 (4th Cir. 2007). The plaintiff reminds that "whether harassment was sufficiently severe or pervasive to create a hostile work environment is 'quintessentially a question of fact' for the jury." *Conner v. Schrader-Bridgeport Int'l, Inc.*, 227 F.3d 179, 199-200 (4th Cir. 2000) (quoting *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 243 (4th Cir. 2000)).

The plaintiff has put forward the following evidence that the harassment was objectively severe and pervasive.  Mills made sexual gestures towards the plaintiff; asked the plaintiff to come to his house; and asked the plaintiff to meet him in the Pediatric Intensive Care Unit after hours, implying that the two men would have a sexual

8

encounter. (Pl. Dep. at 120-121.) Mills would talk about his experiences giving and receiving oral sex from men. *Id*. at 86-87, 121. Mills would touch and fondle himself while making sexual comments to the plaintiff. *Id*. at 121. Mills would follow the plaintiff, whistle at him, and make comments like "you've got a nice walk." *Id*. at 36. Mills told the plaintiff that he enjoyed "sucking the meat off the bone." *Id*. at 32-33. McDowell made frequent comments to the plaintiff that he (McDowell) liked anal sex. *Id*. at 122. McDowell also told the plaintiff that he (McDowell) was "the female [in a two-male couple]." *Id*. Mills asked the plaintiff for something hard to put in his mouth because he needed something to suck on. *Id*. at 120. Mills would often tell the plaintiff about his sexual fantasies. *Id*. at 36-37. And, as discussed, there was at least one incident of unwanted touching. *Id*. at 78-80.

As to the frequency of the conduct, admissible evidence suggests that the plaintiff had contact with Mills or McDowell on every day he worked at the hospital, *id*. at 30; every conversation with Mills and McDowell was of a sexual nature, *id*. at 123-24; and sexual harassment occurred virtually every day over an approximate four month period, (Howard Decl. ¶ 3, 4). The alleged frequency is fairly dramatic. The plaintiff has flatly testified that every single conversation with both Mills and McDowell was sexual and that such conversations happened one or two times every day.

As to the severity of the alleged harassment, the Court thinks a jury could find the comments fairly severe. The incidents involve strongly course language, which directly implicates the plaintiff in sexual conduct with the alleged harassers. The plaintiff also alleges more than course talking, including physical gesturing and the groping of

genitalia. Concerning whether the conduct was physically threatening or humiliating, the plaintiff testified that the conduct was so persistent and unrelenting that he felt as though he were actually being stalked. (Pl. Dep. at 36.) The defendant's owner, C.T. Cromer, stated he was "scared" for the plaintiff when the plaintiff described what was going on at the hospital and that he believed the plaintiff was in "harm's way." (Cromer at 203-204.) Cromer expressed particular concern for the plaintiff when it was necessary for him to be at the hospital at night. *Id*.

Lastly, there is evidence that the conduct may have unreasonably interfered with the plaintiff's actual work performance. Contrary to the defendant's assertion that the plaintiff was able to flee Mills' and McDowell's alleged commentary, the plaintiff testified that while he would try to do so, in practice he could not, because "[w]hen you've got a vending machine hanging open and there's money exposed, it takes time to get that machine shut down, locked up and secured, and it takes a lot of time to get the machine set back to get it closed up." (Pl. Dep. at 86-87.) The plaintiff believably recounted that "[a] lot of comments and gestures can be made in that amount of time." (Howard at 86-87.) Implicitly, the plaintiff is, therefore, suggesting that he was rushed and intimidated in his work and that the affect of the alleged harassment was to literally alter the schedule and pace of the performance of it.

To the Court, all of the *Harris* considerations are present, although to varying degrees, and constitute serious indicia of objectively severe and pervasive harassment. The record includes evidence that the harassers (1) went "out of their way to disgust [him] and make [him] uncomfortable by graphic demonstrations of sexual acts,"

10

*Ocheltree*, 335 F.3d at 328; (2) subjected him to what a reasonable individual may have considered demeaning remarks about his sexual orientation, *see Spriggs*, 242 F.3d at 184-86 (racial epithets); *Sunbelt Rentals*, 521 F.3d at 311 (religious epithets); and (3) subjected him "to frequent comments about [his] body" and their own bodies, *see E.E.O.C. v. R & R Ventures*, 244 F.3d 334, 337-38 (4th Cir. 2001). *Ziskie v. Mineta*, 547 F.3d 220, 228 (4th Cir. 2008). Based on the quality, quantity, and frequency of the remarks, issues of fact exist as to whether the conduct was severe or pervasive.

## 2. Imputed Liability

It is undisputed that the alleged harassers had no employment relationship of any kind with the defendant and had no supervisory role in relation to the plaintiff. McDowell and Mills, however, were employees of Greenville Hospital, which is the defendant's largest client. (Pl. Dep. at 25; Cromer Dep. at 47-48.) It appears that an employer may be responsible for a *non-employee's* sexual harassment of an employee where the employer knows or should have known of the conduct and failed to take immediate and appropriate corrective action. *See* EEOC Guidelines, 29 C.F.R. § 1604.11(e) (employer may be responsible for acts of non-employee where employer "knows or should have known of the conduct and fails to take immediate and appropriate corrective action"); *Watson v. Blue Circle, Inc.*, 324 F.3d 1252, 1258 n.2 (11th Cir. 2003) (observing employer may be liable for harassing conduct of its customers); *Turnbull v. Topeka State Hospital*, 255 F.3d 1238, 1244 (10th Cir. 2001) (stating "employer may be responsible for sexual harassment based upon the acts of nonemployees"); *Lockard v. Pizza Hut*, 162 F.3d 1062, 1073 (10th Cir.1998). The defendant does not really contend

11

otherwise. (Mem. Supp. Summ. J. at 6.)

The Fourth Circuit has stated that an employer is liable for sexual harassment by a non-supervisor if "it knew or should have known about the harassment and failed to take effective action to stop it." *Ocheltree v. Scollon Prod., Inc.*, 335 F.3d 325, 331 (4th Cir. 2003). This rule tracks the language of the Guidelines and the law of other circuits in regards to liability for the harassing conduct of non-employees. Although it does not appear that the Fourth Circuit has precisely considered it, at least one district court in this Circuit has concluded that it is proper to impute liability for the harassing conduct of nonemployees, under circumstances where the defendant had knowledge of the harassment, actual or constructive, and failed to take prompt remedial action. *See McGuire v. Commonwealth*, 988 F.Supp. 980, 988 (W.D. Va.1997), *overruled on other grounds by Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 436 (4th Cir.1998).

The plaintiff has submitted admissible and substantial evidence that the defendant had actual notice of the harassment. (Howard Dep. at 45-48, 51, 54, 58, 113, 124.) Additionally, the defendant's Plant Manager, Greg Adams, and the Owner, C.T. Cromer, each have admitted that the plaintiff complained to them about sexual harassment. (Adams Dep. at 22-23; Cromer Dep. at 12, 75-76, 124-125, 128-129.)

The defendant responds that the plaintiff's reports of sexual harassment were incomplete, non-specific, and vague and did not give the defendant sufficient notice of the severity of the conduct alleged. The characterization is not persuasive. The Court need not recount the plaintiff's full testimony here. The deposition pages cited above create clear issues of fact as to the quality of the plaintiff's notice, whether it was

repeated, specific, and clear. Even the deposition excerpts quoted by the defendant, in its memorandum in support, evidence attempts by the plaintiff to describe the harassment suffered but which were rejected by the defendant as not a problem for which it had any responsibility. (Mem. Supp. Summ. J. at 7; Pl. Dep. at 113-14.) The defendant makes a point of emphasizing that the plaintiff never relayed the specific substance of any harassing comments. But as the defendant itself has recited in its own brief, the plaintiff expressly said he was being "sexually harassed" and that Adams' response was that the plaintiff needed to "[q]uit being a crybaby. They're only teasing you." (Mem. Supp. Summ. J. at 8; Pl. Dep. at 124-25.) A jury could easily and reasonably find that the plaintiff gave as complete a notice of the harassment as would ever be expected. But, even to the extent that the contents of the plaintiff's notice was somehow deficient, a jury would have a basis, and should be given the opportunity, to conclude that such inadequacy was a function of the defendant's own resistance to it.

If the plaintiff's notice is found legally effective, the defendant can only avoid liability by demonstrating that it took immediate and appropriate corrective action to stop the harassment. *See, e.g.,* 29 C.F.R. § 1604.11(e); *Howard v. Winter*, 446 F.3d 559, 567 (4th Cir. 2006).

The defendant in a single paragraph states that it "reprimanded [the plaintiff's] co-worker and required him to apologize, held additional training meetings with all members of the plaintiff's department regarding the company's harassment policy, and transferred the plaintiff to a higher-paying first shift position." (Mem. Supp. Summ. J. at 9; Def. Ex. B, D.) There are a number of issues with the defendant's evidence. First, it

13

is not clear what "co-worker" the defendant is referencing. The plaintiff has not alleged that any "co-worker" harassed him such that any apology was owed; he has alleged that two Greenville Hospital employees harassed him. Second, the Court is unsure how additional training meetings with the *defendant's* employees might have cured unwanted harassment by employees of the Greenville Hospital. And, while it is true that the defendant eventually gave the plaintiff an undated memorandum offering a change in position, the defendant has offered no evidence as to how much time elapsed between the time when the plaintiff first gave notice of the harassment and when the offer of transfer was made. The plaintiff has put forward evidence that he first complained to his supervisor in December 2006, over a year before the transfer memorandum was apparently delivered. (Compare Pl. Dep. at 45-46 with Pl. Ex. D.)

Finally, the plaintiff has put forward evidence that the transfer was actually to his detriment. Specifically, there is evidence that the transfer would have resulted in a per hour decrease in his wages and an increase in the number of hours he was required to work. (Pl. Dep. at 69-70; Def. Ex. D, G.) The plaintiff has also testified that Cromer gave him an ultimatum, telling him "[e]ither you take [the transfer] or you're done." (Pl. Dep. at 71-72, 76.) The plaintiff told C.T. Cromer he could not take the shift; he has young children, one of whom had a medical condition, and he needed to be available to transport the child during the day. *Id*. at 67, 71-72, 76. Accordingly, there exist serious questions about the responsiveness of the defendant's actions, even as it would characterize them.

Moreover, the plaintiff has put forward evidence that the defendant's true

responses included the following: laughing at the plaintiff (Pl. Dep. at 58); telling the plaintiff that the complained of conduct was "just a joke" and that the plaintiff should "let it go" (Pl. Dep. at 46); stating that the complained of conduct was just a joke and not to take things serious (Pl. Dep. at 46-47); telling the plaintiff that "faggots" were "ignorant, retarded people," and that the manager knew the plaintiff was not retarded, *id*.; stating, "Do you realize this could cost me everything?" (Pl. Dep. at 49); telling the plaintiff, "I'm not responsible for the hospital. I'm only responsible for Cromer Food Service. If you have a problem with a Cromer Food Service employee, I can deal with it. But if you've got a problem at the hospital, then you've got to deal with the hospital, because I'm not responsible for that," (Pl. Dep. at 54, 112-113).

A reasonable jury could conclude from the plaintiff's evidence that, not only was the defendant unresponsive to the plaintiff's complaints of harassment, but it was affirmatively dismissive of the same.

Issues of fact, therefore, remain as to each element of the plaintiff's hostile work environment claim.

## II. Retaliation

Next, the plaintiff contends that he was retaliated against for having complained of the alleged sexual harassment and/or for having filed a charge of discrimination with the EEOC. Title VII makes it an "unlawful employment practice for an employer to discriminate against any of [its] employees . . . because he [or she] has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a). The *McDonnell Douglas* burden shifting scheme, *McDonnell Douglas Corp. v.*

*Green*, 411 U.S. 792 (1973), applies in analyzing retaliation claims under Title VII. *Smith v. First Union Nat'l Bank*, 202 F.3d 234 (4th Cir. 2000). The plaintiff does not attempt to use direct evidence to establish his claim of retaliation.

### A. *Prima Face* Case

In order to establish a *prima facie* case of Title VII retaliation, the plaintiff must prove three elements: (1) that he engaged in a protected activity, (2) that an adverse employment action was taken against him, and (3) that there was a causal link between the protected activity and the adverse employment action. *See EEOC v. Navy Federal Credit Union,* 424 F.3d 397, 406 (4th Cir. 2005); *Mackey v. Shalala*, 360 F.3d 463, 469 (4th Cir. 2004).

The defendant contends that the plaintiff cannot establish either the second or third elements of his *prima facie* case. Specifically, the defendant contends that no adverse employment action was ever taken against the plaintiff. The plaintiff responds, however, that the offer of transfer was just such an action.

In *Burlington Northern and Santa Fe Ry. Co. v. White*, 126 S. Ct. 2405 (2006), the United States Supreme Court articulated an objective test for what constitutes an adverse employment action for purposes of a Title VII retaliation claim. Specifically, the Supreme Court stated that an adverse employment action is any action which might have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id*. at 2415 (citation omitted). The retaliation provision of Title VII is intended to prohibit employer actions "that are likely to deter victims of discrimination from complaining to the EEOC, the courts, and their employers." *Id*. Although normally

16

petty slights, minor annoyances, and simple lack of good manners will not create such deterrence, *id*., an employer's actions are to be considered in light of the "circumstances of the particular case, and should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances," *id*. at 2417. The plaintiff has likely created a genuine issue of fact as to whether the offer of transfer was actually an adverse employment action.

As discussed above, there is evidence that the transfer was actually to the plaintiff's detriment in a number of respects, (Pl. Dep. at 69-70; Def. Ex. D, G.), and that Cromer threatened the plaintiff with termination if it were refused (Pl. Dep. at 71-72, 76). Critically, *Burlington* instructs the Court to objectively consider the affect of the action on a reasonable person *in the plaintiff's position*. See *Burlington*, 126 S. Ct. at 2417. Considering the alleged pay decrease and the plaintiff's particular childcare responsibilities, it seems that a jury could find that a reasonable person in the plaintiff's position would have perceived a threatened transfer to a day shift adverse.

Next, the defendant contends that even if the transfer constitutes an adverse action, there exists no causal link between the plaintiff's complaints and the offer of transfer. The Fourth Circuit has held, however, that "very little evidence of a causal connection is required to establish a prima facie case" and "merely the closeness in time between the filing of a discrimination charge and an employer's firing an employee is sufficient" to satisfy the causation element of a *prima facie* retaliation case. *Tinsley v. First Union Nat. Bank*, 155 F.3d 435, 443 (4th Cir.1998); *see also Williams v. Cerberonics, Inc.*, 871 F.2d 452 (4th Cir.1989) (holding three month time period

between protected activity and termination sufficient to satisfy the causation element of the prima facie case of retaliation); *Carter v. Ball*, 33 F.3d 450 (4th Cir. 1994) (finding causal link between filing of retaliation complaints and the plaintiff's demotion five months later).

In this case, the evidence reveals that Cromer received a copy of the plaintiff's EEOC Charge and the Notice of Charge no more than *one week* prior to the offer of transfer, on March 22, 2009. (Cromer Dep. at 148-49, 164-65). Around that same time, Cromer told the plaintiff that he had received the Charge and asked the plaintiff, "What is your complaint, what is your grievance, what did I do that you are not happy with?" *Id*. at 164. The plaintiff also alleges that Cromer told him that he "got this stupid letter" from the EEOC. (Pl. Dep. at 60). When the plaintiff inquired about some other shift, in response to the offer of transfer, Cromer allegedly said, "This is all there is. Take it or leave it." *Id*. at 76.

Alone, the week's time between the defendant's receipt of the charge of discrimination and the arguable adverse employment action of the offer of transfer is more than sufficient evidence from which a jury could find a causal connection at the *prima facie* stage. A jury would be justified in additionally relying on Cromer's remarks, in so concluding.

The defendant has not addressed the remaining portions of the *McDonald Douglas* burden shifting scheme, including its legitimate, non-retaliatory reasons for the transfer or the plaintiff's evidence of pretext. It has made only a passing statement that the offer of transfer was to ameliorate the plaintiff's concerns and not for any retaliatory

reason. The Court believes that a jury would be justified in finding this claim pretextual based upon Cromer's arguably disparaging remarks concerning the Charge of Discrimination and the fact that the transfer was offered essentially as an ultimatum. It seems that a jury could conclude that it was not a good faith attempt to cure the harassment insofar as it was such an inflexible solution.

Accordingly, genuine issues of fact remain as to the plaintiff's retaliation claim such that dismissal is improvident.

### III. Employment Relationship

The defendant also contends that the plaintiff's claims should be dismissed because he made material misrepresentations on his employment action, which, had they been known, would have vitiated the employment relationship between the defendant and the plaintiff. The defendant relies on two state law workers' compensation cases which are plainly inapposite. *See Cooper v. McDevitt & St. Co.*, 196 S.E.2d 833, 835 (1973); [Doc. 47-13 (*Brayboy v. Workforce and American Home Assurance*, Op. No. 26675 (S.C. S. Ct., June 22, 2009)]. The defendant was not aware of any such misrepresentations at the time of the plaintiff's complaints and the offer of transfer. There is no dispute that the plaintiff, in fact, was employed by the defendant at all relevant times. Critically, actionable misconduct by the plaintiff does not act as a complete bar to his claims or otherwise render any provable discrimination "irrelevant." *McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352, 356-57 (U.S. 1995.) As the defendant concedes, evidence of such misrepresentations may have some effect on allowable damages but it does not demand dismissal of the claims as a matter of law.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends that the defendant's motion for summary judgment [Doc. 47] be denied.

IT IS SO RECOMMENDED.

                                          s/Bruce H. Hendricks
                                          United States Magistrate Judge

January 6, 2010
Greenville, South Carolina.